UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| KEITH B. COLLINS, <br><br> Plaintiff, <br><br> v. <br><br> WEXFORD HEALTH OF PITTSBURGH *et al.*, <br><br> Defendants. | CAUSE NO. 3:18-CV-919-DRL-MGG |

OPINION AND ORDER

Keith B. Collins, a prisoner without a lawyer, filed a complaint alleging that he received inadequate medical care for his mental illness in violation of the Eighth Amendment while housed at the Indiana State Prison. In his complaint, Mr. Collins sues nine defendants: Wexford Health of Pittsburgh, Wexford Health of Indiana, Superintendent Ron Neal, Sherri Fritter, Reinaldo Matias, Mr. Rippetoe, Mrs. Haimer, Mr. Hufford, and Joshua Wallen. He seeks compensatory, punitive, and nominal damages from each defendant.

A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, pursuant to 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

In the complaint, Mr. Collins alleges that, from December 22, 2017 through January 19, 2018, he received inadequate medical care for his mental illness; namely, his severe, chronic depression that causes him to become suicidal. ECF 1 at 1, 12-13. Specifically, he claims that, on December 22, 2017, he was informed by a nurse that his prescription for Wellbutrin had run out. *Id.* at 12. Because he had

no medication, Mr. Collins immediately notified the medical department and the prison's psychiatrist, Dr. Rippetoe, and filed an informal grievance with Superintendent Neal. *Id.* at 14.

On December 28, 2017—six days after his Wellbutrin ran out—Dr. Rippetoe saw Mr. Collins. ECF 1 at 15. Dr. Rippetoe confirmed that Mr. Collins suffered from severe depression and ordered a refill of Wellbutrin. *Id.* However, the next day, on December 29, 2017, the prison's medical staff notified Mr. Collins that the prescription had not been approved. *Id.* Dr. Rippetoe told Mr. Collins that a doctor in the central office denied the refill; however, that doctor would refill the prescription if Mr. Collins would agree to a crush and float order. *Id.* Mr. Collins agreed to the order, and Dr. Rippetoe refilled the medication. *Id.*

On January 18, 2018, Mr. Collins alleges that he became severely depressed because he was not receiving Wellbutrin. ECF 1 at 16-17. He claims he informed Sherri Fritter, Wexford's Health Services Administrator, that he had not received his medication, but she did nothing about it. *Id.* at 5-6. Because he was having suicidal thoughts, he asked Mrs. Haimer, a prison officer, who was in the guard cage near his cell, if he could meet with his therapist, Ms. Mann. *Id.* at 17. Mrs. Haimer contacted the mental health staff and learned that Ms. Mann had been terminated from her employment at the prison. *Id.* She relayed this information to Mr. Collins. *Id.*

Several minutes later, he approached the guard cage again and asked for help because he was having suicidal thoughts and was intent on cutting his wrists. *Id.* At that point, Mr. Collins asked Mrs. Haimer to contact Reinaldo Matias, another prison therapist, who had recently treated him. *Id.* Mrs. Haimer telephoned Mr. Matias and explained that Mr. Collins was having suicidal thoughts. *Id.* Mr. Collins alleges that Mrs. Haimer told him that Mr. Matias was not available and said he would "just ha[ve] to wait." *Id.* Mr. Collins states that he approached Mrs. Haimer two more times for assistance because he was having suicidal thoughts, but Mrs. Haimer became angry, would not make any more phone calls, and told him to go back to his cell. *Id.* at 17-18. He then made one last attempt for help

by telling her he was suicidal and was going to "cut" himself. *Id.* at 18. Mrs. Haimer again told Mr. Collins to return to his cell. *Id.*

After returning to his cell, Mr. Collins learned that Mrs. Haimer had notified Officer Hufford that he was having suicidal thoughts. ECF 1 at 18. He claims that Officer Hufford responded by simply "laugh[ing]." *Id.* Because Mrs. Haimer and Officer Hufford stated they were getting ready to close the cell doors, Mr. Collins walked to the cell bars in front of the guard cage and told Mrs. Haimer that he "was really messed up and was going to kill [himself] by cutting [his] wrists with a razor." *Id.* Mrs. Haimer became upset and ordered him to go to his cell. *Id.* After his cell door was shut, Mr. Collins cut himself with a razor. *Id.* He told another inmate that he had cut himself, and the inmate yelled for medical help. *Id.* at 18-19. Several minutes later, first responders arrived at his cell, and Mr. Collins was taken to the hospital for surgery to repair his arm. *Id.* at 19. After returning to the prison on January 18, 2018, Mr. Collins was placed on suicide watch and prescribed Wellbutrin. *Id.* at 19-20.

Under the Eighth Amendment, inmates are entitled to constitutionally adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To establish liability, a prisoner must satisfy both an objective and subjective component by showing: (1) his medical need was objectively serious; and (2) the defendant acted with deliberate indifference to that medical need. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). A medical need is "serious" if it is one that a doctor has diagnosed as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). On the subjective prong, the plaintiff must establish that the defendant "acted in an intentional or criminally reckless manner, *i.e.*, the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so." *Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005).

For a medical professional to be held liable for deliberate indifference to an inmate's medical needs, he or she must make a decision that represents "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008). However, "[n]egligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson v. Hartley*, 391 F.3d 898, 902 (7th Cir. 2004) (citations omitted). It is not enough to show that a defendant merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). Even incompetence does not state a claim of deliberate indifference. *Minix v. Canarecci*, 597 F.3d 824, 831-32 (7th Cir. 2010). Further, a delay in providing treatment can constitute deliberate indifference when it causes unnecessary pain or suffering. *Arnett v. Webster*, 658 F.3d 742, 752-53 (7th Cir. 2011); *Grieveson v. Anderson,* 538 F.3d 763, 779 (7th Cir. 2008).

Accepting Mr. Collins's allegations as true and giving him the benefit of the inferences to which he is entitled, as the court must at this stage of the proceedings, he has alleged facts from which it can be inferred that Sherri Fritter, Reinaldo Matias, Dr. Rippetoe, Mrs. Haimer, and Mr. Hufford were deliberately indifferent to his serious medical needs by intentionally failing to respond promptly to his serious need of mental health treatment, which led to his attempted suicide on January 18, 2018.

Mr. Collins has also named Wexford Health of Indiana and what appears to be its parent company, Wexford Health of Pittsburgh, as defendants. ECF 1 at 3-4, 12-13. As to the Wexford defendants, he claims they violated his Eighth Amendment rights by failing to provide trained medical staff to address his mental health issues for the period December 22, 2017 to January 19, 2018. ECF 1 at 3-4. Here, it appears that Mr. Collins is attempting to hold the Wexford defendants liable because they employ the prison's medical staff. However, the Wexford defendants are not vicariously liable

for the actions of their employees under 42 U.S.C. § 1983. *Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir. 2001); *see also Johnson v. Dossey*, 515 F.3d 778, 782 (7th Cir. 2008) ("private corporation is not vicariously liable under § 1983 for its employees' deprivations of others civil rights"). Because Mr. Collins's complaint against the two Wexford defendants appears to be based only on the medical staff's decisions related to his care for his mental illness, he cannot proceed against them. Accordingly, the Wexford defendants must be dismissed.

As to Superintendent Neal, Mr. Collins has not alleged that he was personally involved in his medical care. ECF 1 at 4-5, 14-15. Pursuant to 42 U.S.C. § 1983, a lawsuit against an individual requires "personal involvement in the alleged constitutional deprivation to support a viable claim." *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003). Furthermore, there is no general *respondeat superior* liability under § 1983, and Superintendent Neal cannot be held liable simply because he oversees operations at the prison or supervises correctional officers. *See Burks v. Raemisch,* 555 F.3d 592, 594 (7th Cir. 2009). Accordingly, Superintendent Neal must be dismissed.

Mr. Collins has also sued Joshua Wallen, the prison's grievance officer. ECF 1 at 9. He claims that, after he filed a grievance about not receiving his medication, Mr. Wallen failed to notify prison staff. *Id.* Mr. Collins states that, if Mr. Wallen had notified appropriate prison staff, his suicide attempt would have been prevented. *Id.* However, Mr. Collins has not alleged that Mr. Wallen caused or participated in the alleged violations regarding his Wellbutrin refill or mental health medical care. *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in the violations are responsible.") Accordingly, Mr. Wallen must be dismissed.

Mr. Collins also asserts that the defendants in this case violated the prison's chronic care policy, which mandates the process for renewing medication for mentally ill inmates. ECF 1 at 12-13. He explains that, because he was diagnosed with a severe mental illness and prescribed Wellbutrin, prison staff were required to schedule an appointment with the prison's psychiatrist before his medication

5

ran out. *Id.* The failure to follow policy is not a constitutional violation. *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) ("However, 42 U.S.C. § 1983 protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices."). Accordingly, Mr. Collins cannot proceed on this policy claim against the defendants.

Furthermore, it appears that Mr. Collins has asserted a negligence claim against the defendants. ECF 1 at 10. He states the defendants intentionally sought to inflict pain on him by collectively depriving him of his medication and mental health treatment. *Id.* However, as stated, "[n]egligence on the part of an official does not violate the Constitution, and it is not enough that he or she should have known of a risk. Instead, deliberate indifference requires evidence that an official actually knew of a substantial risk of serious harm and consciously disregarded it nonetheless." *Pierson*, 391 F.3d at 902 (citations omitted). Accordingly, Mr. Collins cannot proceed on his negligence claim against the defendants.

Last, Mr. Collins has filed multiple motions attempting to expedite this case. ECF 23, 25, 30, 31. Such motions are unnecessary. It appears as though Mr. Collins believes that his filings should receive immediate attention, superior to all other matters before the court. Certainly, this case is important, but all cases filed in this court are important. It takes time to accurately review and justly rule on each filing. Doing that is delayed by unnecessary motions like the four motions Mr. Collins has filed in this case. Because they are unnecessary, the motions will be denied.

For these reasons, the court:

(1) GRANTS Keith B. Collins leave to proceed against Sherri Fritter, Reinaldo Matias, Dr. Rippetoe, Mrs. Haimer, and Mr. Hufford in their individual capacities for compensatory, punitive, and nominal damages for intentionally failing to promptly respond to his serious need for mental health treatment from December 22, 2017 through January 19, 2019, which led to his attempted suicide on January 18, 2018, in violation of the Eighth Amendment;

(2) DISMISSES Wexford of Pittsburgh, Wexford of Indiana, and Superintendent Ron Neal;

(3) DISMISSES all other claims;

(4) DIRECTS the clerk and the United States Marshals Service to issue and serve process on Sherri Fritter, Reinaldo Matias, Dr. Rippetoe, Mrs. Haimer, and Mr. Hufford at the Indiana Department of Correction with a copy of this order and the complaint (ECF 1) as required by 28 U.S.C. § 1915(d);

(5) ORDERS, pursuant to 42 U.S.C. § 1997e(g)(2), Sherri Fritter, Reinaldo Matias, Dr. Rippetoe, Mrs. Haimer, and Mr. Hufford to respond, as provided for in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claims for which Keith B. Collins, has been granted leave to proceed in this screening order;

(6) DENIES AS UNNECESSARY the motion for screening and service (ECF 23);

(7) DENIES AS UNNECESSARY the motion for screening and service (ECF 25);

(8) DENIES AS UNNECESSARY the motion to compel (ECF 30); and

(9) DENIES AS UNNECESSARY the motion to be more informed (ECF 31).

SO ORDERED.

December 2, 2019 	*s/ Damon R. Leichty*
	Judge, United States District Court